Good afternoon. First case on this afternoon's docket is a case between the State of Illinois v. Henry Fisher. We have Attorney Clyde King for the appellant and Attorney Patrick Daly for the affidavit. May I please record Mr. Daly? This case has been here before. As a matter of fact, I've more or less told Mr. Daly both of us are growing old coming here on this case. So much to the point that my wife has to give me reading glasses that I wear around my neck. I want to start my argument with a quote from People v. Holmes, since Holmes and his progeny are important to the outcome and proper disposal of this case. The Supreme Court stated in Holmes, the defendant in any criminal proceeding has an inherent and constitutional right that all proceedings against him shall be open and notorious and in his presence and any inquiry and any acquisition of information or evidence outside the open court and outside the presence of the defendant is prejudicial. The defendant is not required to resort to extraneous proof to show that he has been prejudiced. As a matter of fact, under the law, he can't. He has a right to rely upon his constitutional guarantee that nothing shall be considered against him except the confident evidence introduced in open court, in his presence, by the witnesses who are present. The defendant has the right to confront him. This court analyzed that passage in Stallings v. Black and Decker. In an opinion written by Justice Chapman, God rest his soul. No, actually it was my soul. Was it your soul? You're premature. I'm very happy to know that, Justice Chapman, because that makes it all the better for me. Charlie can't do much about it. I'll quote how the analysis that Justice Chapman used in Stallings worked. The defendant argues, this was Black and Decker, actually they argue very similar to the state in this case. The defendant argues that the plaintiff does not meet the standards set out by the Illinois Supreme Court in People v. Holmes. The defendant contends that Holmes mandates that a jury verdict can only be set aside if the conduct involved has such a probability that prejudice resulted that the trial inherently lacked due process. The plaintiff, on the other hand, contends that he need only show that the improperly acquired information relates directly to a crucial issue in the case and may have improperly influenced the jury, shifting the burden to the prevailing party to show that no actual prejudice occurred. We agree with the plaintiff. That's the law in the Fifth District. And that law has never been applied by any trial judge that has heard this case, and there's been four of them now. And why is it not good law? A defendant who has extraneous information outside his presence that he couldn't confront and answer doesn't have the opportunity to address. He can't show a prejudice to the outcome of his case if it was adverse to him. He can't because of the law you have created that we cannot impeach jury verdicts. But the party that benefited from some piece of outside extraneous evidence that came into the jury process can establish that no actual prejudice occurred. How do they do it? They do it by showing the overwhelming nature of the other evidence. That's the way it should be. It's not the way it was here. But it's the way it should be. You got it right, Justice Chapman. But it won't be a Williamson County trial judge. They haven't gotten it right yet, and they didn't get it right here. Let me read you Judge Spironi's article from his article. And this court made very clear in Rule 23 what he needed to do. He went and analyzed that, and then he wrote in his order that he is going to address the issue of whether or not a probability exists, a reasonable probability exists, that Judge Wilson would have granted a post-trial motion had he known all of the nature of the evidence that that one juror possessed from listening to the broadcast and deliberated on this case. And he said, with regard to the prejudice from the Strickland, he said, this inquiry involves, this involves an inquiry into, it's a direct quote, whether the conduct of the jury, are you listening, whether the conduct of the jury in this case involves such probability of prejudice that the defendant's trial was inherently lacking in due process. What's that got to do with Stallings? It's absolutely 180 years wrong, Stallings, but more important, he's judging the law and the issue in this case on the conduct of the jury. It has nothing to do with the conduct of the jury. You cannot rule without being manifestly erroneous if you don't know the issue. Let me read it again. The inquiry here is into whether the conduct of the jury in this case involves such a probability of prejudice that the defendant was inherently lacking in due process. That's where I was inherently lacking in due process. It's not about the conduct of the jury, but you know what, look at his order and his analysis. He goes into a lengthy analysis about it. This juror didn't watch this newscast intentionally. It was an accident. He walked into it and saw the end of it. He wasn't trying to investigate anything. And then he analyzes it in his order. That's why Holmes and Stallings is distinguishable for what I'm presenting here because there was no independent investigation. He's ruling on the conduct of the jury creating the probability of prejudice. And it's the nature of the information that the juror acquired that has to measure the probability of prejudice. It's the information that a person doesn't get the opportunity to confront or cross-examine that is important. It isn't how the juror acquired the information. Holmes, in any inquiry or any acquisition of information or evidence outside open court, any acquisition, what did this juror hear? The night before he deliberated. Do we know what he heard? I mean, we never identified who the juror was, right? We did not. And so that juror never said, this is what I heard. So it's a circumstantial case on what was heard. Justice Stewart, because we do know from the disclosures of the other jurors that he mentioned that there was a broadcast about Jackson County and the defendant being charged with a sex offense in Jackson County and the defendant having that charge dropped, okay? And if you look at the content of the last portion of the broadcast, this is what it is reasonable to assume one juror in the defendant's case heard the night before he deliberated. And by the way, he heard this after the judge had told him all the evidence is in. He heard all the evidence. So he goes home. His wife is watching TV and she's watching the newscast and he walks in with his wife and watches their case. And here's what he hears. This girl was only 12 years old when she alleges that Henry Fisher sexually molested her not once, but twice. Henry Fisher manages and owns rental properties in the Carbondale area, mainly housing students. He was charged with home invasion and sexual assault by one of the female tenants in 1994. Those charges were later dropped. Now Fisher is back in court again facing sexual molestation charges again. Now the state in its brief parses this and says, well, no, it's not the same kind of case. I submit to you that that's damaging information. I think it's almost ludicrous to say that that juror requiring that information on the eve of deliberation when he was told he heard all the evidence can't be prejudicial or have the possibility or may have influenced the way he deliberated on the case. Well, we don't exactly know what that juror heard because that juror was never identified. But what we do know is what some of the other jurors reported that the unidentified juror shared with them. We do know, Justice Chapman, that there was only one broadcast KTVU. We do know that. We don't know if he was in and out. We know this is the content of the broadcast. We know that's the content of the broadcast. And you know what? He lied on the road. Whoever it was, we took all the male jurors' depositions. And whoever it was would have identified that if he had the opportunity to identify it. But that's not the issue here. The issue is whether or not Henry Fisher received a fair trial because that juror acquired that kind of information. We know, number one, that he watched the broadcast, undisputed, a portion of the broadcast, the last part of the broadcast. We know the content of the last portion of the broadcast. And it's bad. And mind you, let me quote from People v. Bobo, my friend Justice Rarick, when he talked about proof of other crimes, because that's what we have here. As a matter of fact, we've got the worst crime. Fisher wasn't convicted. The charge was dismissed. The Supreme Court has said it is fundamentally prejudicial to introduce evidence of prior arrests, particularly if they are of the same type of crime. No judge would have ever allowed this to be heard by a juror because it was so highly prejudicial. In People v. Bobo, we have the rule of law. Generally, evidence of other crimes or wrongful conduct is not admissible to show the defendant's character or propensity to commit crime or wrongful acts. The underlying rationale is that such evidence is objectionable not because it has no appreciable probated value, but because it has too much. It's too relevant. It relates too closely to the crucial issue of guilt or innocence. And so he writes, consequently, the erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for dismissal. My God, we have a piece of evidence that one of these jurors deliberated with that would have never been admitted. And by the way, if the state had tried to admit it, there was a process due the defendant before it was admitted. And the legislature has made that a legislative policy. They allow propensity evidence in sexual cases now, but you need to read the statute. They provide for a process. And it certainly involves a balancing test in terms of the overwhelming nature of the prejudicial nature of it. And it also allows for the fact that the jury needs to be instructed. The defendant got no instruction from this juror on how to weigh this piece of evidence that he had a prior sexual assault charge. Think about this. You're on trial. From a young woman who says you've twice digitally penetrated her and you're saying no. And before the juror deliberates the case, he gets to hear on the news. Huh? They said, I heard all the evidence. And now I'm learning he had used charges some other female accused him of sexual assault before. How do you think that affected his listening to the closing arguments? But to continue with why no Williams County judge has ever gotten this right, I want to go on with Speroni's order. Of all the things he says in the order, this is the most indicative of the fact of how confounded he was. The issue he was deciding was not whether the conduct of the jurors created a probability of prejudice. But beyond that, he writes further, the information that the jurors received in the jury deliberations from the juror that watched the broadcast didn't relate to any issue in the case, much less a crucial one. When I read that the first time I received the order in the mail, I said to myself, when is somebody going to get this right? What do I have to do to get a Williamson County judge to understand the truth? The only issue in this case was who the jurors were going to believe. And a juror hearing the night before deliberations that the defendant had a prior accuser of the same offense is recognized by this court in hundreds of cases to be the most highly prejudicial thing that could happen to a defendant. Not any issue in the case. I defy Mr. Daley to come up here and say that this didn't relate to any issue in the case. But the perplexing and misplaced reasoning goes on in the article. Because when he turns gratuitously to talk about the objective reasonableness of the trial counsel's behavior in the case, Justice Ferroni says, well, let me read it. Defendant's attorney could not contact Ms. Colombo again because she had told the defendant's investigator that she did not want to talk about the case anymore. Therefore, defendant's claim comes down to whether the trial counsel was ineffective for failing to contact Ms. Eaths. What do you mean? These defense counsel learned that a juror heard the end of this broadcast about a prior sexual assault judge, and they didn't want to talk to any of the other jurors. And they didn't try. They didn't try. I hate to think that the law is that reasonably competent criminal defense lawyers would duplicate this kind of conduct in every case. And it's not some novel issue that we're proposing here because it's post-trial, which the state tends to try to make the argument. There are a wealth of cases that deal with lawyers' ineffectiveness for failing to investigate circumstances when circumstances justify it and call for it. How could it possibly be objectively reasonable for defense counsel to know what one of the jurors heard? To know that seriously damaging extremist evidence had been heard by one of the jurors, and they go, well, let's call Newsom, and we'll make the issue with Newsom, who says he can't remember whether the guy mentioned anything about the offense. So we can't actually prove through him that the juror who heard the broadcast heard anything about the sexual offense. And that's how you decided the direct appeal. Read your opinion in the direct appeal. You decided it because there was nothing about the nature of Newsom's testimony that showed the nature of the crime. And implicit in that decision was, well, had you proven that it was a prior sex offense that the other juror heard, that would have been damaging or potentially damaging. And applying Stallings, Judge Wilson would have then said to the state, I think it's your turn to prove that no actual prejudice occurred, instead of saying, you haven't proven actual prejudice to the defendant. That's what happened to the defendant on direct appeal. It was totally askew. We'll never know. We'll never know. What would have happened had they interviewed the jurors or subpoenaed the jurors, if they had done anything instead of nothing? But I'm telling you that consistent with objective, reasonable criminal defense work, they needed to try to develop this issue. And they didn't. And the defendant didn't receive a fair trial. Because he never got an opportunity to confront or to answer anything about a 1994 sexual assault and homicide charge that was dropped. Why do you suppose it was dropped? Because there was good reason it was dropped. And he could have done that. But he didn't get that chance. And that's what Holmes and what Stallings is all about. Jurors hearing things or investigating and acquiring information that is not tested by the other side. It's just unfair to allow a verdict to stand when the other side doesn't get the opportunity to even answer damaging evidence. It's unquestionably what occurred here. For Ken Fisher's part, if this court decides to decide the case or if it remands it so that the judge at least decides it on the right issues, one way or the other, it doesn't matter a lot to him because he will have been punished on a verdict that was tainted, regardless of what happens. But he will not have the scarlet letter on him going forward. And that's why this appeal is important. Thank you, Mr. King. We have the opportunity to conduct Mr. Daly. Thank you. Good afternoon. Good afternoon. For as much paper and white space that we've covered in this case over the course of the years, the issue is not really particularly complicated, nor are the facts themselves particularly complicated or lengthy. It relates to simply the issue of what did the jury hear and did it meet the legal standard for a finding that the defendant was denied a fair trial? So I think that the facts are not a problem here because 11 of the 12 jurors were deposed. They were a problem in the last appeal because the judge had not made rulings on a number of objections, but we've gotten rid of that problem. And all the extraneous and irrelevant and improper information has been excised through a hearing that involved the state and Judge Keene and the judge, and rulings were made on those objections. So this court now has, I think we would all agree, a proper set of facts on which to finally make a decision whether or not the defendant was denied a fair trial from the ineffective assistance of counsel, which has as a necessary predicate, of course, a prejudice prong that would lead to the conclusion that the defendant was denied a fair trial as a result of improper information making its way to the jury. Do you agree with the defendant's characterization that the case boiled down to the victim's word against the defendant's word? This was a non-forensic case. So there was no corroborating evidence either way? Well, you know, I was involved in a direct appeal on this case about nine years ago. I'm trying to remember. I can tell you right now it's a non-forensic case. So whether there was other testimonial corroboration, I can't tell you off the top of my head. But there was no semen or things of that nature that we would find in the sexual assault case. So yes, it would be a fair characterization. It was a testimonial case. And it's pretty much uncontested that the jury struggled with it because they were deadlocked, said they were deadlocked a couple times. They did receive a premise. So I think it's a fair inference. We can't talk about what the jury talked about, but I think the premise at least leads you to a deadlock. And I think they announced they were six to six. It seems like five to six. At that point, I think that sounds right. And it went on and ultimately came to a verdict. That's right. Although I do feel compelled to add, just in the spirit of that observation, that it would probably be inappropriate to connect the dots of what happened here with the ultimate result of the deliberations, or I should say the process of deliberations, because it would necessarily insinuate the effect of the outside information on the jury's deliberate process. It's the reason why this wasn't decided the last time. I mean, my point, I just want to make sure that the State agrees that this obviously was a closed case. I mean, there wasn't overwhelming evidence. I won't concede that. I won't concede that it was not a slam dunk case. If you can grant me that concession, I'll... All right. Because you're putting me on the spot. Okay. Now, there is obviously what we have here, I think, a divergence of what the proper legal standard is of this court is to apply. The defendant does an excellent job of synopsizing this Black and Decker case, which Justice Chattanooga authored. I deduce that from looking at the date of the decision. I'm glad I was right. But the... I think that we also have to look a little further than the Black and Decker case and kind of figure out what it is that the court did here. Because there's a lot of criticism that's being leveled at the circuit court for applying an incorrect standard. Now, the standard that the State has adhered to is whether or not there's such a probability that prejudice resulted that the trial is to be deemed inherently lacking in due process. The Black and Decker standard, as stated in that decision, in what appears to be like an implicit rejection, or a not rejection, but a distinguishing type of analysis from Hobley, was that it has to relate to a crucial issue in the case and may have properly influenced the jury. Do you believe this was a crucial issue? Well, in response to Justice Kachin-Keene's challenge, I think it would be remiss of me to say that any time a sex offense comes up during the course of a trial, I would be proud of it. It's fair to say. It's fair to say it's something. With the same brush. Sure. I'm not going to get up here and say absolutely nothing to do with that. So challenge met and conceded. The... Let's go back really to the beginning of this case, though. Let's go back to what we'll call Fisher 1, which is the initial decision in this case. And there, at this point, all we have is Stephen Newsom. We don't know about anybody else in this book. But we do know this much, at least. We know that the issue that's being raised by the defendant on appeal has to do with information coming into the jury. We don't know. Part of the problem in that case, and what is now stemming subsequent post-conviction proceedings, is the more precise delineation of the nature of this. It's what animated this court's decision in Fisher 2, which Justice Chapman also wrote, remanding this for an evidentiary hearing because we wanted to see, what did you hear? Because that's the one we were going to decide on. Fair enough. However, let's go back and look at Fisher 1. Fisher 1. So there's really no distinction in the issue here from the beginning to now. It's just a matter of quantum of evidence. The defendant relied upon Holmes and Stallings. And this court rejected that analogy out of hand, principally because those two cases involve a jury investigation. And what this court had stated was that this is more akin to People v. Szilagyi, which the state relies upon and which the defendant criticizes and replies to. And I'm going to address that in a moment. However, this court did go on to state that it's more than that because the sighting of Szilagyi, which is a media exposure case, and the founding of this case is more akin to a media exposure case. Because in Szilagyi, you had newspaper articles that made their way into the jury deliberations. And in a way here, through a proxy, if you will, one of the jurors heard something and then delivered it to other jurors, ostensibly. It's the same kind of situation. It's a media exposure thing done through the third party, or first party, if you want to talk about it that way, from the jurors. Okay? So this court in Fisher 1 adopted the Szilagyi standard, which is exactly what this court has subsequently relied on, or desired to rely on, as the trial court's relied on, is that there is such a probability that prejudice resulted that the trial is deemed inherently lacking in due process. That is the issue to be decided. And that is Fisher 1, page 3 of the order. Now, let's fast forward now to Fisher 3. Now, Fisher 3 is after this court had remanded this for a hearing. The hearing was held. Depositions were taken. This came up here. Judge King and I were up here duking it out again to see, you know, whether the court's denial of the post-conviction petition was correct. The court was frustrated because it appeared that the judge, who was Judge Ickes at the time, improperly relied on information in the jurors' depositions which related to the deliberative process, which is improper. So it remanded it with specific directions to rule on those objections, and it didn't really stop at that. And it was stated here, and I'm going to go to page 8 of Fisher 3. Okay? In this case, that involves an inquiry, that being what the judge is required to do once it received the proper information. Based upon the invisible evidence now available, pursuant to the principles articulated in the Holmes and his progeny, into whether the conduct of the jury in this case involves such a probability of prejudice that the defendant's trial is inherently lacking in due process. So now twice this court has stated what I will submit to you as the proper standard. It not only stated it, it mandated it. That was this court's directive after Fisher 3. So it's a bit incongruous for defendants to say, well, the court applied the wrong standard. Well, this is the standard this court told them to apply. This is the right standard. It's the syllogy standard, as this court stated way back in 2005. Now, Black and Decker references the standard applied in civil cases. I don't know if that is what was the prime animating distinction, because I think that I have to say that there's a big difference, I think, from an analytical standpoint, from talking about something where it's inherently lacking in due process, and there's probability of prejudice versus may have influenced the jury, which certainly softens the standard, I think, that the defendant is going to be operating to show. So, obviously, it's to me fairly critical that we establish at the outset what the proper legal standard is. Because from that, then, it just becomes an application of the facts to the proper standard. If the defendant is correct, his job gets substantially easier. If I'm correct, I like to think it goes the other way. That's for this court to decide. Now, the defendant criticizes the state's reliance on syllogy in his reply brief and says, huh, syllogy doesn't even cite the Holmes, and it's not a Holmes progeny case. So, let's go to syllogy, and I'm going to refer to the paragraph, which references, actually, to Headnotes 6 and 7. I'm going to the text of the decision, which states as follows. Because the actual effect of complaint of conduct on the minds of the jurors cannot be proved, this court has held, the Supreme Court has held, the standard to be applied is whether the conduct involves such a probability that prejudice will result that it is to be deemed inherently lacking in due process. People versus Holmes. So, that's not a correct assertion. Holmes animated syllogy. Syllogy animated this court. We have that legal standard. That's the legal standard that the Supreme Court had to apply. So, as far as I'm concerned, this entire discussion about we're not doing the right standard here, you should be using the Black and Becker standard, is contrary both to the law and to the directives of this court on multiple occasions. So, it is under that legal standard I think this court has to move forward and decide about whether the defendant was denied a fair trial as a result of what occurred from his juror. Now, I do want to emphasize, as we talk about this, an evidential emphasis, there's been a lot of discussion, some back and forth, I suppose, about, you know, what is the import of the actual recording. I'm not going to dispute the contents of the recordings, but I think that the contents of the recordings is not the evidence that this court uses to decide this case. Evidence that this court uses to decide this case is the juror's testimony. If it were as simple as just introducing the tape and that's it, I'm in deep trouble. But that's not what happened. The reason that all these jurors were opposed was because they wanted to know what they heard. But several of them, I can't remember exactly how many, said that they heard something having to do with criminal conduct of a sexual nature. Yes, and that would be probably the biggest extent to which anyone could identify. And that was several jurors. Now, they didn't, what happened was, of course, is they provided information. Let me back up. It's true that some of the jurors did hear something related to a sexual type offense. I believe there was maybe, looks like four of them. There were five that... Wouldn't one be enough? Couldn't one be enough? I think, well, here's how I would probably approach this case, Your Honor. I think that that's probably true. And I think that you have to ultimately decide the case essentially on the broad picture of what it appears that the jury actually heard. So each juror is, I think, to be examined individually about what they heard, but it's still a collective analysis, in other words. If 12 jurors had come in and said, I heard the guy came in and he said he was charged in Jackson County with aggravated criminal sexual assault, and those charges were dropped, parenthetically I was involved in filing those charges back in the early days. That's a lot different than jurors giving, I think, mixed reactions about what they heard, because I think that overall relates to how that information was ultimately perceived or received by the jury when it was given. So in other words, the vaguer that we get, the less likely that you're going to find prejudice, notwithstanding whether one, two, or 12 heard it, if that makes sense. Now, I do think that when this Court remanded this case for a hearing, it is, well, it was remanded after Fisher III. The analysis that was to be employed was whether the judge, the ruling in the post-trial motion would have been different had it been privy to the information that was anticipated to be gleaned at the hearing, ultimately about deposition testimony. The legal standard for this is, of course, you don't automatically get a hearing. You have to be able to meet a certain level of evidentiary criteria before you even get to the step where you're going to be able to have a full hearing that would involve the process of examining different jurors. Now, in order to compel an evidentiary hearing, the proponent has to produce what the courts have characterized as specific, detailed, non-conjectural evidence. Although it seems perhaps counterintuitive to say that we should go back and look at how this trial court would have ruled, just under that narrow context where it appears that we've already sort of advanced to the stage where we're going to be considering all the jurors. I think that if you're going to adhere to the standard that we're sort of rolling back the clock to the post-trial stage and let's see what this judge might have done or should have done had the proper process been gone along from the beginning, then I think you still necessarily have to come and analyze whether or not the defendant would have been entitled to a full-blown evidentiary hearing in the first place, which would have involved subpoenaing other jurors, most of whom were not willing to cooperate with the defense investigator at that point. Now, there were two jurors who knew something. There was, of course, Newsom and Jaffee. And we've already discussed Newsom to some extent, who gave sort of vague and sort of inconclusive testimony. And I don't deny that. And, of course, that certainly helped the state's cause in Fisher 1. Now, as far as Mr. Heath is concerned, he did give more information. But the question the court had to ask, of course, is whether or not that he produced detailed, specific, non-conjectual evidence. Well, he did say that this juror, who he didn't name, talked about the sex offense, which he didn't name, and it was dropped. And I'm limiting this to his affidavit of testimony as it relates to proper consideration. He said other stuff, which more relates to the deliberation process. And what I will add, he also threw in there that there was broad speculation that the charge was of a child predator nature, although it appears that that may have been his offered perception rather than actually how it was actually given to the jury. No one else but the other juror repeated that particular characterization. So, of course, at the initial analysis, the state would first admit that that information was not specifically detailed and specific and involved a lot of conjecture that would essentially stop the process at that point. I think that Mr. Heath is probably the most extreme example, once you actually get to the jurors and once you move past that stage and get to an evidentiary stage of all the jurors, because the rest provided the best vague and inconclusive details. There was a number that said they claimed they didn't hear anything. A couple said, I think I heard something that was related to maybe a prior offense. And then several others said it was a sex-related offense. We don't know what type of sex-related offense it was, which I think is interesting because the proposition is that this guy came in and sort of recited verbatim or something close to his news broadcast, which appears to be at least the insinuation of the defense in this case. It's amazing that no one could particularly identify what it is that this sex offense was, which could be anything. You're dealing with a late jury. Yes. The broadcast, whatever portion of it might have been overheard and whatever was conveyed, was either, I don't know, I don't remember what the offense was, or it was of asexual nature. It wasn't a burglary. It wasn't a financial crime, an investment or anything like that. It was, in effect, a cousin of what the jury was deliberating. Doesn't that make a difference? I acknowledge that, and I wouldn't be remiss to say that there isn't something. But that is why I started my argument by saying that something is at the standard. A reasonable probability such that there is a fundamental denial of the due process. And that's a fairly high standard. And so, I mean, it is what it is. And so we can sit here, and Judge Keenan and I can argue about if it qualifies or doesn't qualify. It's sort of, as I see it, this is how I perceive the kind of situation. It's the difficulty we have in these cases because we can't get into the deliberate processes. So it's sort of a facial impression of what the evidence is and whether that meets that high standard. And that's why I submitted the report that it is a high standard. It's not just me. It's a reasonable probability that it meets this particular level of due process violation that we have no longer any faith in the juror's verdict. And you're not contesting the proposition that everything that the jurors related were either, I don't remember exactly what the charge, or the charge was of asexual nature. That's correct. There were variations in everyone's testimony. And, again, I suppose if it only related to what one person said, we could have, you know, I won't get into that particular analysis, but I do think that when you look at it from top to bottom, you have at best a very ill-defined belief of something or they heard something, but there was not really any specificity. It wasn't tied to this case at all. It wasn't even related to the discussion of how old it was. And the fact that the case was dropped. If I could just finish this one thought here. Now, Justice Keene mentions about the arrest versus the arrest in the overall, it's been well-established the case of an arrest carries prejudicial components, which is true, if a jury hears that, because it becomes sort of an identification of a propensity. But I think there's a significant difference between arrest and dropped, because the arrest just sort of hangs there. And jurors, lay jurors, may be more inclined to believe that someone who's arrested is guilty. But what's the natural inclination that flows when a case is dropped? Is it that he's guilty? Or is that, for some reason or another, he was unfairly charged? Or there wasn't enough evidence? Or maybe they're going to say. Somehow it got off. Somehow it got off. Now, I know there's a lot of argument to make on this, because if I were Justice Keene, I'd get up here and say, it may be should have gotten off, and that's an outrage, and let's get on this side. I understand. But what I think the proposition I'm making here is this, that when a case is dropped, it's nonetheless a fundamentally different type of concept than an arrest, and certainly a conviction, which removes any doubt about whether the guy did it. And so I've got so much more to say, but I don't have time. So I appreciate your time, Your Honor. Thank you. Thank you. Mr. Keene. Your Honors, you have the history of this case and the briefs and the facts of the case were laid out in 25 pages by me in the first brief. And this is what this case amounted to. It was a 15-year-old girl who alleged that when she was 12, she was digitally penetrated by the defendant twice. And when he was babysitting for her and her brother, in the same room with her and her brother, and the defendant and the state tried to corroborate this. They put the mother on tape and tried to set up Mr. Fisher with asking questions about what his daughter, her daughter, and him, and they struck out on that and could not corroborate. As a matter of fact, things he said on the tape helped him, and the state got nothing from that. And then the state actually put on a doctor who conducted an exam of the girl to indicate that she couldn't find anything indicative of sexual abuse. But, what the state wanted was, but that's not unusual. So that was the case, and the defendant denied that it happened. It was a he said, she said case. There were motives involved on the part of the girl because she wanted to move from her mother to the father, and I could go on in more detail, but let me tell you something. It truly wasn't a slam dunk case. And quite frankly, the lawyers I'm saying should be found to be ineffective for not following up on the information they had, did a very nice job on the trial of the case. Dick White, Randy Passers, good lawyers. I'm not saying that just because you're a good lawyer doesn't mean that you don't drop the ball from time to time. I believe in this case, it was seriously dropped by not being able to log the record. Now, Mr. Daly, appropriately, I have a lot of respect for him. He found the thing that I knew he would find, and that is in Fisher III, Justice Fulmer did instruct the trial to follow Holmes and its progeny and determine whether or not the trial was inherently lacking in due process. But that makes no sense because if he follows Holmes and its progeny, that's not the test. I just read it to you, Justice Chapman wrote it. Although there is the obvious distinction that Holmes is criminal and Stalin is not. And I know civil defendants should get more protection than criminal defendants by this court. We hear that all the time because it's easier to do that, Justice Chapman. It's hard to pull the trigger and give a man a fair trial who has been convicted of molesting a 12-year-old girl. In any event, let me say this to you, Justice Chapman. If you're not going to decide this case by applying the Stalin standard to Mr. Fisher, then reverse Stalin's. Don't be dishonest in Rule 23, Arthur, because that's what Fisher III was, that's what Fisher II was, and that's what Fisher I was. Fisher I was the most atrocious opinion that's ever been written by this court. And the idea that Zalabi applies to this case is absurd, but that's how he got there in Fisher I. Oh, it's akin to media exposure cases. No, it isn't. Zalabi didn't have something happen behind his back that he couldn't confront and couldn't answer. The jurors read newspaper accounts of what happened in trial and then start talking about it. That's totally different. It is not Holmes and his project. And all the arguments the state makes for you to go back and disingenuously decide this case on Zalabi are absolutely wrong. And would be totally disingenuous to employ, just as they were in Fisher I. But I will say this, in Fisher I, with the record that Newsom made and what the lawyers made with Newsom, and didn't try to make a better record, this court was perfectly correct in saying, what's the big deal? Some crime, some time, that got dropped. The big deal here is the broadcast. And Mr. Daly can parse what the jurors say now, six years later, eight of them can't remember, have you been said anything? Okay. Four of them do. Oh, it was some kind of sexual offense, six years ago. But one last one. The key to this is the one juror who heard that he had been charged with sexual assault, that a girl of 12 years old alleged that he had sexually molested her and that he was now on trial again for sexual molestation. That is not adult. This juror believed he had been accused by a teenager before. And he deliberated six hours, and you know what? What effect would that have? Can't prove it. Couldn't legally prove it. But I know this, there was a probability for prejudice by extraneous information. And under Black and Decker, Mr. Fisher deserves no trial. Thank you, Mr. King. Thank you, Mr. Daly. And we'll take matters as they stand. And we'll be taking a brief recess.